Matter of Y. SS. (E. SS.) (2025 NY Slip Op 06562)

Matter of Y. SS. (E. SS.)

2025 NY Slip Op 06562

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-23-1562
[*1]In the Matter of Y. SS., Alleged to be a Permanently Neglected Child. Tompkins County Department of Social Services, Respondent; E. SS., Appellant.

Calendar Date:October 7, 2025

Before:Garry, P.J., Lynch, Ceresia, Fisher and Mackey, JJ.

Michelle I. Rosien, Philmont, for appellant.
Tompkins County Department of Social Services, Ithaca (Arthur C. Stever IV of counsel), for respondent.
Andrea J. Mooney, Ithaca, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Tompkins County (Scott Miller, J.), entered July 25, 2023, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent (hereinafter the mother) is the mother of the subject child (born in 2013).[FN1] In 2021, the child was adjudicated to have been neglected by the mother, a finding premised upon the mother having agreed to involve the child in her performance of sexual services for money. This Court upheld that adjudication upon appeal (Matter of Y. SS. [E. SS.], 211 AD3d 1390 [3d Dept 2022]). We later upheld the grant of petitioner's motion to be relieved of its obligation to make reasonable efforts to reunite the mother with the child in light of the involuntary termination of the mother's parental rights as to several of the child's siblings (Matter of Y. SS. [E. SS.], 220 AD3d 1087 [3d Dept 2023], lv denied 41 NY3d 901 [2024]). Meanwhile, petitioner commenced this proceeding seeking to adjudicate the child to be permanently neglected and to terminate the mother's parental rights. After fact-finding and dispositional hearings, Family Court granted that relief in full. The mother appeals.
As relevant here, "a permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for at least one year after the child came into the agency's care, to substantially and continuously or repeatedly plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Asiah S. [Nancy S.], 228 AD3d 1034, 1035 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 907 [2024]; see Matter of Daimeon MM. [Laurie MM.], 230 AD3d 1416, 1416-1417 [3d Dept 2024], lv denied 42 NY3d 910 [2025]; Social Services Law § 384-b [7] [a]). As petitioner was relieved of its obligation to demonstrate such efforts (see Matter of Y. SS. [E. SS.], 220 AD3d at 1088-1089), the inquiry here distilled to whether petitioner established, by clear and convincing evidence, that the mother failed to substantially plan for the child's future (see Matter of Ruth C. [Jaslene C.], 226 AD3d 677, 679 [2d Dept 2024]). It is well established that, "[t]o substantially plan, a parent must, at a minimum, take meaningful steps to correct the conditions that led to the child's initial removal" (Matter of Konner N. [Justin O.], 235 AD3d 1112, 1115 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Jase M. [Holly N.], 190 AD3d 1238, 1241 [3d Dept 2021], lvs denied 37 NY3d 901 [2021], 37 NY3d 901 [2021]).
The credited evidence at the fact-finding hearing established that the mother failed to acknowledge her role in the underlying neglect — that is, how her prostitution and involvement of the child [*2]in that prostitution as bait for a pedophile harmed the child and placed her at serious risk of further harm. Petitioner also proffered evidence that, following the child's removal, the mother continued to have contact with unsafe men and to exchange sex for money. No credible evidence was admitted demonstrating that the mother had any lawful sources of income sufficient to support the child, and she repeatedly refused help in obtaining public and private financial assistance. There was also evidence that the mother continued to use alcohol and illegal drugs, in contravention of the conditions imposed upon her, and she repeatedly evaded her random alcohol and drug screenings. To the extent that the mother participated in some mental health services, she denied the need for treatment. The mother also failed to obtain suitable housing, free from infestation, and she refused to let petitioner conduct required home visits on multiple occasions. She was late to, missed or cut short a significant number of visits and calls with the child, spoke to the child regarding court proceedings, and engaged in demeaning commentary and play during visits, all of which was observed to have a negative impact upon the child. Ultimately, the mother was unable to progress beyond unsupervised visitation for one hour per week. Thus, although she maintained contact with the child, there is a sound and substantial basis for Family Court's finding that the mother failed to substantially plan for the child's return and that the child was therefore permanently neglected (see Matter of Asiah S. [Nancy S.], 228 AD3d at 1036-1037; Matter of Nikole V. [Norman V.], 224 AD3d 1102, 1105 [3d Dept 2024], lv denied 41 NY3d 909 [2024]; Matter of Desirea F. [Angela H.], 217 AD3d 1064, 1067-1068 [3d Dept 2023], lv denied 40 NY3d 908 [2023]; Matter of Makayla I. [Sheena K.], 201 AD3d 1145, 1149 [3d Dept 2022], lv denied 38 NY3d 903 [2022]).
We are also unpersuaded by the mother's argument that Family Court should have issued a suspended judgment instead of terminating her parental rights. "Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child[,] and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Jason O. [Stephanie O.], 188 AD3d 1463, 1467 [3d Dept 2020] [internal quotation marks and citations omitted], lv denied 36 NY3d 908 [2021]; see Matter of Issac Q. [Kimberly R.], 212 AD3d 1049, 1054 [3d Dept 2023], lv denied 39 NY3d 913 [2023]). Although "the court may decide to issue a suspended judgment rather than terminating parental rights, a suspended judgment is only appropriate where a parent has made significant progress[,] such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Carmela D. [Shameeka G.], 232 AD3d [*3]1126, 1131 [3d Dept 2024] [internal quotation marks, brackets and citation omitted], lvs denied 43 NY3d 903 [2025], 43 NY3d 903 [2025]; see Family Ct Act § 633; Matter of Michael B., 80 NY2d 299, 311 [1992]).
At the dispositional hearing, the mother finally acknowledged that she did in fact neglect the child, although her acknowledgment was still coupled with a degree of minimization and Family Court continued to question her honesty. The evidence revealed that the mother had recently reengaged in certain services, but there was still no credible evidence presented that the mother had obtained safe living conditions or sufficient lawful employment. In contrast, the evidence demonstrated that the child's foster parents provided a stable, loving environment, where the child was engaged in enriching activities. The foster parents were committed to being an adoptive resource for the child, ensured that she received regular counseling and took it upon themselves to help the child maintain a relationship with her seven biological siblings. The evidence further demonstrated that the child had made significant progress since being placed with the foster parents such that she no longer exhibited the sexually inappropriate behavior that she did upon her removal from the mother's care.[FN2] Giving appropriate deference to Family Court's credibility determinations and factual findings, and viewing the mother's limited, belated efforts in the context of her longstanding failures to address the underlying issues here, the decision to terminate her parental rights finds sound and substantial support in the record before us (see Matter of Asiah S. [Nancy S.], 228 AD3d at 1037-1038; Matter of Issac Q. [Kimberly R.], 212 AD3d at 1054-1055).
The mother lastly argues that Family Court's refusal to grant her an adjournment of the fact-finding hearing to retain new counsel and the allegedly deficient representation she otherwise received deprived her of her right to a fair hearing. Well in advance of the fact-finding hearing, Family Court denied the mother's application to replace her fourth assigned attorney with yet new counsel, reasoning that the repeated alleged breakdowns in communication were attributable to the mother. Upon denial of that application, Family Court advised the mother that she remained free to retain counsel of her choosing. The mother did not avail herself of that opportunity in the five weeks between that denial and the start of the fact-finding hearing and instead requested an adjournment on the morning the hearing was to start in order to do so. Family Court denied the mother's request for an adjournment, observing that she had repeatedly represented that she would be retaining her own counsel but never did. The court, however, elected not to take testimony that day, instead allowing the mother and assigned counsel the entire day to prepare for the hearing together, further noting that there would be two weeks before the date on which the mother [*4]would present her case and thus ample time to summon any witnesses. The mother, of course, also remained free to retain counsel for subsequent hearing dates, which she did not do. Under the circumstances, this process was a sound exercise of discretion (see generally Family Ct Act § 626 [a]).
As for the representation the mother received, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, a [parent's] constitutional right to the effective assistance of counsel will have been met" (Matter of Ronan L. [Jeana K.], 195 AD3d 1072, 1077 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088 [3d Dept 2017], lv denied 30 NY3d 908 [2018]). The mother has failed to demonstrate how counsel's decision not to call her mental health or substance abuse counselors was the result of a lack of a legitimate strategy, and, under the circumstances, it is speculative to assert that any such testimony would have been any more favorable to her than the related evidence already admitted (see Matter of Dianne SS. v Jamie TT., 235 AD3d 1138, 1143 [3d Dept 2025]; Matter of Madelyn V. [Lucas W.-Jared V.], 199 AD3d 1249, 1252 [3d Dept 2021], lv denied 38 NY3d 901 [2022]). It is also speculative to assert that alleged text messages and emails in the mother's possession would have led to a different outcome, given the absence of proof that those sources of evidence in fact exist or what the content thereof reveal (see Matter of Traci A. v Maxmillion B., 232 AD3d 1070, 1074 [3d Dept 2024]; Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1298 [3d Dept 2023]). Counsel's election not to submit video recordings that the mother apparently took during visits, which admittedly captured certain inappropriate conversation between the mother and the child, or to call as a witness a male friend of the mother, who engaged in his own questionable conduct during visits, also cannot be said to have lacked strategy. To the extent that counsel failed to object to certain evidence on hearsay grounds, that evidence merely restated that which was already established by other unchallenged evidence or was otherwise unnecessary to support the finding of permanent neglect, and any such error by counsel therefore did not deprive the mother of her right to a fair hearing (see Matter of Traci A. v Maxmillion B., 232 AD3d at 1073; Matter of Y. SS. [E. SS.], 211 AD3d at 1393). Ultimately, counsel effectively cross-examined witnesses, lodged appropriate objections and presented cogent arguments upon summation. The mother has therefore failed to meet her burden to demonstrate that she received less than meaningful representation (see Matter of Jase M. [Holly N.], 190 AD3d at 1243).
The mother's remaining contentions, to the extent not expressly addressed herein, have been considered and [*5]determined to be without merit.
Lynch, Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The paternity of the child has never been established.

Footnote 2: We note that the attorney for the child supports termination of the mother's parental rights as being in the child's best interests.